UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **PAULA ANDERSON LEDFORD** | * | **CIVIL ACTION NO. 17-1679** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **NANCY A. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

Paula Ledford filed the instant application for Title II Disability Insurance Benefits on July 6, 2015. (Tr. 13, 130-133 ). She alleged disability as of January 8, 2014,[1] because of lupus, seizures, depression, arthritis, and anemia. (Tr. 152, 155). The state agency denied the claim at the initial stage of the administrative process. (Tr. 50-63). Thereafter, Ledford requested and received a January 9, 2017, hearing before an Administrative Law Judge ("ALJ"). (Tr. 25-49). However, in a March 10, 2017, written decision, the ALJ determined that Ledford was not disabled under the Social Security Act, finding at step five of the sequential evaluation process

---

[1] She later amended her disability onset date to January 8, 2013. *See* Tr. 122, 13.

that she was able to make an adjustment to work that existed in substantial numbers in the national economy. (Tr. 10-21). Ledford sought review of the adverse decision before the Appeals Council. On October 27, 2017, however, the Appeals Council denied Ledford's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On December 28, 2017, Ledford filed the instant complaint for judicial review. She asserted the following assignments of error:

1. The ALJ committed reversible error in failing to recognize that her condition meets or is equivalent to the criteria in the list of impairments described in 20 C.F.R., Part 404, Subpart P, Appendix 1-Specifically Section 14.02, and rejecting that claim without any consideration or discussion.

2. The ALJ committed reversible error by misstating the evidence to justify his decision.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

    (4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### **ALJ's Findings**

**I.**    **Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 15). At step two, he found that the claimant suffered severe impairments of osteoarthritis, lupus, and depression. *Id.*[2] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 15-17).

---

[2] He determined that the claimant's medically determinable impairment of seizure disorder was non-severe. *Id.*

## II. Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[3] except that she could not work around hazards such as unprotected heights and dangerous moving machinery. (Tr. 17-19). In addition, because of her depression, she was limited to simple one, two, or three step instructions. *Id*.

## III. Steps Four and Five

At step four, the ALJ employed a vocational expert ("VE") to find that the claimant was unable to perform her past relevant work. (Tr. 20-21). Accordingly, he proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual on the date last insured, and subsequently changed age categories to an individual "closely approaching advanced age." *Id*. She also had a high school education, with the ability to communicate in English. *Id*. Transferability of skills was immaterial. *Id*.

The ALJ then observed that given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rules 202.21 and 202.14, Table 2,

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Appendix 2, Subpart P, Regulations No. 4. *Id*. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for light work. *Id*. In response, the VE identified the representative jobs of cashier – light, *Dictionary of Occupational Titles* ("DOT") Code # 211.462-010, and sales attendant – light, DOT 299.677-010, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 20-21, 47).[4]

## Analysis

**I.**

In *Audler v. Astrue*, the Fifth Circuit recognized that the ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing 42 U.S.C. § 405(b)(1)). An ALJ's bare conclusion that the claimant's impairments do not meet or equal a listing does not provide a basis for judicial review to assess whether the finding is supported by substantial evidence. *Id*. Nevertheless, an ALJ's failure to adequately explain his step three determination does not require remand unless it affects the claimant's "substantial rights." *Id*.[5] A claimant's substantial rights are affected at step three when she demonstrates that she meets, or at least appears to meet, the requirements for a listing. *See Audler, supra*.

To establish that a claimant's injuries meet or medically equal a listing, the claimant must

---

[4] The VE responded that for the cashier job, there were 3,354,000 positions available nationally and 64,000 jobs in Louisiana. (Tr. 21, 47). For the sales attendant job, there were 4,155,000 positions nationally, and 59,000 opportunities in Louisiana. *Id*. This incidence of work constitutes a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[5] *I.e.*, the error may be harmless. *Audler, supra* (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 2007)).

provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered. 20 C.F.R. § 404.1526(c). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present. *Selders*, 914 F.2d at 620.

Plaintiff contends that her impairments meet the listing for lupus, a/k/a Systemic lupus erythematosus ("SLE"). The relevant section provides:

>14.02 Systemic lupus erythematosus. As described in 14.00D1. With:
>
>A. Involvement of two or more organs/body systems, with:
>
>1. One of the organs/body systems involved to at least a moderate level of severity; and
>
>2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
>or
>
>B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
>1. Limitation of activities of daily living.
>
>2. Limitation in maintaining social functioning.
>
>3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1

In this case, the ALJ stated that he considered plaintiff's counsel's memorandum in which counsel asserted that his client's impairment(s) met listing 14.02, but then summarily concluded that Ledford's impairments failed to meet that listing. (Tr. 16). The ALJ proceeded to apply the psychiatric review technique to determine that plaintiff's depression was a severe impairment that moderately affected her ability to concentrate, persist, and to maintain pace. (Tr. 16-17).

On appeal, plaintiff does not contend that she suffers marked limitations of functioning, and therefore, necessarily does not argue that she meets the B criteria for listing 14.02. Rather, she asserts that she meets paragraph A of 14.02. At the outset, the court observes that the ALJ determined that plaintiff suffered from the medically determinable impairment of lupus, which he found to be a severe impairment. (Tr. 15). To the extent that the ALJ's finding does not suffice per se to establish the requisite documentation for SLE, the court observes that, generally, SLE must satisfy the "Criteria for the Classification of Systemic Lupus Erythematosus" issued by the American College of Rheumatology ("ACR"). *See* Listing 14.00(D)(1).

According to the ACR, the presence of four or more of the following criteria are required for diagnosis of SLE: 1) malar rash, 2) discoid rash, 3) photosensitivity, 4) oral ulcers, 5) arthritis, 6) serositis, 7) kidney disorder, 8) neurological disorder (seizures or psychosis), 9) blood disorder (anemia, et al.), 10) immunologic disorder (presence or absence of certain antibodies), and 11) abnormal antinuclear antibody. (Tr. 126-127). The instant record contains evidence that Ledford suffered from at least four of these criteria. For instance, she suffered from oral thrush and candidiasis, photosensitivity, seizures, arthritis, anemia, and moderately increased inflammatory markers. *See* Tr. 232-233, 248, 207-211, 261-263. In fact, in March 2014, Dr. Rangaraj diagnosed Ledford with undifferentiated connective tissue disease, with moderate synovitis, and surmised that she might have early rheumatoid arthritis. (Tr. 207-211).

The record also contains evidence that Ledford's SLE involved two or more organs/body systems, at least one of which was of moderate severity. For example, the ALJ determined that Ledford suffered from a mood disorder - depression, that he found to be of moderate severity. He also found that she suffered from osteoarthritis, which he characterized as a severe impairment. (Tr. 15). In addition, although the ALJ concluded that Ledford's seizure disorder was non-severe at step two of the sequential evaluation process, he later assigned a limitation of functioning in his RFC that precluded exposure to heights and dangerous machinery as a result of her seizures. *See* Tr. 46. This limitation suggests more than a mild or insignificant impairment.

Finally, the record contains evidence that plaintiff had at least two constitutional symptoms or signs, e.g., – fever,[6] malaise,[7] and (possibly) involuntary weight loss.[8] *See* Tr. 300, 305, 164.

In sum, plaintiff has pointed to evidence, that if credited, would support a finding that she meets, or at least appears to meet the requirements for listing 14.02. To be sure, the record is far from uniform. However, the ALJ did not weigh or otherwise explain his basis for resolving the evidence against Ledford regarding this finding. Under these circumstances, the ALJ's failure to adequately discuss the evidence and explain the basis for his step three findings is an error that affects plaintiff's "substantial rights" and requires remand. *See Audler, supra*.

---

[6] Dr. Belue regularly documented that Ledford's current problems included "fever, unspecified." However, in his review of systems, he consistently found that she was negative for chills, fatigue, fever, and weight change. The ALJ may resolve this conflict upon remand.

[7] At the hearing, plaintiff testified that when she was working she stayed sick all of the time. (Tr. 30).

[8] Plaintiff indicated that she had lost about 40 pounds.

**II.**

Plaintiff further argues that the ALJ made several misstatements in the evidence that undermine confidence in his decision. The court interprets this argument as a challenge to the ALJ's RFC. Although some of the errors identified by plaintiff reflect conflicts between her function report and her hearing testimony, some of the misstatements are not so readily explained. For example, the ALJ stated that Ledford "lives with family members, with no problems getting along with them." (Tr. 16). Plaintiff's testimony was to the contrary. (Tr. 29, 33-36). This error could have affected the ALJ's assessment of the effects of her depression and resulted in a social limitation of functioning, especially where the ALJ disregarded the finding of the agency psychologist,[9] and determined on his own that her mental impairment was severe.

The ALJ also stated that "[a]t the hearing, claimant testified that since not working, her health has improved." (Tr. 19). Again, plaintiff's testimony was to the contrary. (Tr. 31, 40). The Commissioner urges the court to find that these errors are harmless because it was plain that the ALJ relied on the objective medical findings and plaintiff's treatment history. *See* Gov.'t Brief, pg. 10. Indeed, the ALJ stated that he agreed with the state agency "medical consultant['s]" determination that Ledford's physical impairments limited her to a wide range of "light" work. (Tr. 19). As it turns out, the state agency physical RFC form was completed by Tinia Houston, SDM. *See* Tr. 55-57. The court observes, however, that Ms. Houston is not a medical professional; rather, she is an agency "single decision maker" ("SDM").

An SDM or disability examiner is not an acceptable medical source (or even a medical source at all). Therefore, Houston's RFC finding that she constructed for purposes of the

---

[9] Non-examining agency psychologist, David Atkins, Ph.D., completed the psychiatric review technique as to plaintiff's mental impairment(s).

agency's initial determination, is not afforded the same weight as an opinion of an agency medical or psychological consultant. *See* 20 C.F.R. § 404.1527, *see also* Program Operations Manual System ("POMS") DI 24501.001 THE DISABILITY DETERMINATION SERVICES (DDS) DISABILITY EXAMINER (DE) – MEDICAL/PSYCHOLOGICAL CONSULTANT (MC/PC). In fact, on September 14, 2010, the Commissioner's Chief ALJ issued a memorandum affirming that findings by agency SDMs are not opinion evidence to be considered by ALJs in their decisions. *See* CONSIDERATION OF SINGLE DECISIONMAKER (SDM) RFC ASSESSMENTS AND OTHER FINDINGS – REVISED (Sept. 14, 2010) discussed in *James v. Astrue*, Civ. Action No. 11-2129, 2013 WL 443846 (W.D. La. Jan. 17, 2013) *report and recommendation adopted,* 2013 WL 443819 (W.D. La. Feb. 5, 2013).

Ultimately, then, the ALJ simply divined Ledford's RFC based on the ALJ's own assessment of the effects of Ledford's physical impairments. While an ALJ need not always ground his RFC on a physician's medical source statement, his RFC still must be supported by substantial record evidence. For instance, in *Ripley v. Chater*, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). Specifically, the Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id*. However, without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*. Plaintiff's own testimony does not support an RFC for modified light work. (Tr. 32, 42-44). Moreover, the ALJ's assessment of the effects of plaintiff's impairments is undermined by his misapprehensions of the evidence. *See* discussion, *supra*. Accordingly, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

Because the foundation for the ALJ's step five decision was premised upon an RFC that is not supported by substantial evidence, the court further finds that the ALJ's ultimate conclusion that plaintiff is not disabled is likewise not supported by substantial evidence. Remand is required.

## Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 11th day of February 2019

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE